IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BOBBY CHARLES LONG, | § | |
| (TDCJ #760892), | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-05-3789 |
| | § | |
| SERGEANT BOEHNEMANN, | § | |
| Defendant.[1] | § | |

## MEMORANDUM AND ORDER

State inmate Bobby Charles Long (TDCJ #760892) filed a complaint under 42 U.S.C. § 1983, alleging that his civil rights were violated when he was in custody at the Fort Bend County Jail. At the Court's request, Long has provided a more definite statement of his claims. The defendant, Sergeant William L. Boehnemann, has filed a motion for summary judgment. (Doc. # 23). Long has not filed a response, and his time to do so has expired. After reviewing all of the pleadings, the motion, and the applicable law, the Court grants the defendant's motion for summary judgment and dismisses this case for reasons set forth below.

## I.    BACKGROUND

When Long filed this suit, he was in custody at the Fort Bend County Jail. Sometime thereafter, Long notified the Court of his transfer to the Texas Department of Criminal Justice - Correctional Institutions Division, where he remains incarcerated. The only

---

[1]    The complaint lists the defendant's name as "Sergeant Boehmemann." (Doc. # 1). The summary judgment motion confirms that correct spelling of the defendant's name is Sergeant William L. Boehnemann.

defendant in this case, Sergeant William L. Boehnemann, is employed by the Fort Bend County Sheriff's Office as kitchen manager at the Fort Bend County Jail (the "Jail").

Long complains that, as kitchen manager at the Jail, Sergeant Boehnemann denied him "reasonable provisions" during the Muslim holy month of Ramadan in October of 2005. Long explains that Muslims are obliged to fast from dawn to dusk during the holy month of Ramadan, taking meals only before sunrise and after sunset.  Long contends that he asked Sergeant Boehnemann to provide him with a "sack lunch" during the month of Ramadan in lieu of the standard fare served to Jail inmates during the day.  Long evidently wanted the sack lunch to keep in his cell until after sunset.  Long alleges that his request was refused and that this interfered with the exercise of his religious beliefs because he was denied an evening meal.   Long faults Sergeant Boehnemann for failing to make a reasonable accommodation for his religious beliefs during the holy month of Ramadan by providing him with a sack lunch comparable to the one given to diabetics or to those inmates who return to the Jail late in the day after court settings.  Long seeks injunctive relief, as well as punitive and compensatory damages from Sergeant Boehnemann.

Sergeant Boehnemann moves for summary judgment, arguing that Long's claims fail as a matter of law.  Sergeant Boehnemann notes that Long was provided an opportunity to request a religious accommodation pursuant to the state-approved Religious Practices Plan in place at the Fort Bend County Jail, but that Long did not take advantage of that opportunity.  Sergeant Boehnemann argues, therefore, that Long failed to request a religious accommodation according to Jail procedures and that he otherwise failed to exhaust available

2

administrative remedies with respect to his claim.  Thus, Sergeant Boehnemann maintains

that he did not violate Long's civil rights in any way.  The parties' contentions are discussed

further below under the governing standard of review.

## II.   <u>STANDARD OF REVIEW</u>

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil

Procedure.  Under Rule 56, a court must determine whether "the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any, show

that there is no genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law."  FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 250 (1986).  The moving party bears the burden to show that "there is an absence

of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317,

325 (1986); *Capitol Indem. Corp. v. United States*, 452 F.3d 428, 430 (5th Cir. 2006).

Once the moving party meets its initial burden, the nonmoving party "must set forth

specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e).  The

nonmovant cannot satisfy this burden with conclusory allegations, unsubstantiated assertions,

or only a scintilla of evidence. *Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir. 1994)

(en banc).  To survive summary judgment, the nonmovant must submit or identify evidence

in the record to show the existence of a genuine issue of material fact as to each element of

the cause of action. *See Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003) (citation

omitted).  Facts and inferences reasonably drawn from those facts should be taken in the light

most favorable to the non-moving party.  *Eastman Kodak Co. v. Image Technical Servs.,*

*Inc.*, 504 U.S. 451, 456 (1992). Where the non-moving party fails to establish "the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," no genuine issue of material fact can exist. *Celotex*, 477 U.S. at 322-23; *Whiting v. University of Southern Miss.*, 451 F.3d 339, 345 (5th Cir. 2006).

The plaintiff proceeds *pro se* in this case. Courts construe pleadings filed by *pro se* litigants under a less stringent standard than those drafted by attorneys. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). Under this standard, pleadings filed by a *pro se* litigant are entitled to a liberal construction that affords all reasonable inferences which can be drawn from them. *See id*; *Oliver v. Scott*, 276 F.3d 736, 740 (5th Cir. 2002). Nevertheless, "the notice afforded by the Rules of Civil Procedure and the local rules" is considered "sufficient" to advise a *pro se* party of his burden in opposing a summary judgment motion. *Martin v. Harrison County Jail*, 975 F.2d 192, 193 (5th Cir. 1992); *see also Ogbodiegwu v. Wackenhut Corrections Corp.*, 202 F.3d 265 (5th Cir. 1999) (unpublished table opinion) ("Although the pleadings filed by *pro se* parties are held to 'less stringent standards than formal pleadings drafted by lawyers,' *pro se* parties must still comply with the rules of procedure and make arguments capable of withstanding summary judgment.").

As noted above, the plaintiff has not filed a response to the motion for summary judgment within the time allowed. According to this Court's local rules, responses to motions are due within twenty days, S.D. TEX. R. 7.3, unless the time is extended. Any failure to respond is taken as a representation of no opposition. S.D. TEX. R. 7.4. The Court

4

specifically directed the plaintiff to respond within thirty days to any dispositive motion filed by the defendants or face dismissal for want of prosecution.[2]  (Doc. # 17, *Order for Service of Process*, ¶ 4).

Notwithstanding the plaintiff's failure to respond, summary judgment may not be awarded by default.  *See Hibernia Nat'l Bank v. Administration Cent. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985).  "A motion for summary judgment cannot be granted simply because there is no opposition, even if failure to oppose violated a local rule."  *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 362 n.3 (5th Cir. 1995) (citing *Hibernia Nat'l Bank*, 776 F.2d at 1279).  In that regard, the movant has the burden of establishing the absence of a genuine issue of material fact and, unless he has done so, the reviewing court may not grant the motion regardless of whether any response was filed.  *See Hetzel*, 50 F.3d at 362 n.3. However, in determining whether summary judgment is warranted, the district court may accept as undisputed the facts set forth in the unopposed motion.  *See Eversley v. MBank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988).

## III.   DISCUSSION

### A.   Failure to Exhaust Administrative Remedies

---

[2]      The certificate of service attached to the defendant's motion for summary judgment shows that a copy was served at the plaintiff's address of record at the Holliday Unit, and that a separate copy was served on the plaintiff at the Terrell Unit, where the plaintiff currently resides.  The Court notes that the plaintiff has failed to update his address as required by local rules and express instructions given to the plaintiff.  (Doc. # 3, *Order Granting Leave to Proceed IFP*, at ¶ 9).  Thus, Long appears to have abandoned his suit.

Sergeant Boehnemann argues that the complaint must be dismissed because Long failed to exhaust available administrative remedies before filing suit. Because Long filed this suit while in custody, his complaint is governed by the Prison Litigation Reform Act (the "PLRA"). Under the PLRA, codified as amended at 42 U.S.C. § 1997e(a), an inmate is required to exhaust administrative remedies for all "action[s] . . . brought with respect to prison conditions" before filing a civil rights suit in federal court under 42 U.S.C. § 1983 or "any other Federal law." The Supreme Court has held repeatedly that § 1997e(a) requires exhaustion of *all* administrative procedures before an inmate can sue in federal court. *See Booth v. Churner*, 532 U.S. 731, 741 (2001); *see also Porter v. Nussle*, 534 U.S. 516, 532 (2002) (holding that the PLRA requires exhaustion of all claims concerning prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong).

Sergeant Boehnemann notes that all inmates at the Fort Bend County Jail have a specific avenue available for requesting religious accommodations, religious counseling, and religious education. He presents a copy of the Religious Practices Plan in place at the Fort Bend County Jail, which was adopted pursuant to Chapter 291 of the *Texas Commission on Jail Standards Rules and Regulations* and approved by the Texas Commission on Jail Standards. (*Motion for Summary Judgment*, Exhibit 1, *Affidavit of Kenneth Lee*, at 2; Exhibit C, *Religious Practices Plan*). The objective of the Religious Practices Plan is "to provide inmates" at the Jail "with the opportunity to continue practices consistent with their religious beliefs, without jeopardizing the safety and security of the facility or presenting an undue

6

burden on county resources." (*See id*. at 1).  Under this Plan, any inmate who wishes to request a special religious accommodation must make a written request to the Jail Administrator, who will consider the request and provide a written response, "including reasons for any denial." (*See id*.).

Sergeant Boehnemann also presents a copy of the *Inmate Handbook* for the Fort Bend County Jail, which provides inmates with information about the procedure for requesting religious accommodations.  In that respect, inmates are instructed to submit a written Inmate Request Form to request an accommodation for religious reasons.  (*Motion for Summary Judgment*, Exhibit B, *Inmate Handbook* at 8). These forms are available from any floor deputy.  (*See id*.).

The *Inmate Handbook* also outlines the procedure that inmates are required to take to complain about the denial of a requested religious accommodation.  Specifically, there is a two-step formal grievance process for inmates who wish to complain about any of the following: (1) a violation of civil rights; (2) a criminal act; (3) an unjust denial or restriction of inmate privileges; (4) a prohibited act by facility staff.  (*See id*. at 8).  If informal attempts to resolve an inmate's grievance are unsuccessful, inmates are directed to submit a formal written statement to the Grievance Board using a Grievance Form that is available from any officer.  (*See id*.).  A formal grievance may also be submitted on "standard writing paper" and sent to the "Grievance Officer."  (*See id*.).  If an inmate is unsatisfied with the response, he may submit a written report to the Sheriff requesting an appeal of the decision.  (*See id*. at 10).  The Sheriff will review the findings, actions, and conclusions of the Grievance Board

7

and the Grievance Reviewing Officer and will notify the inmate, in writing, of his decision concerning the appeal within fifteen working days. (*See id.*). The Sheriff's decision on appeal is "final." (*See id.*).

Sergeant Boehnemann presents an affidavit from Captain Kenneth Lee, who is the appointed official in charge of the Detention Division of the Fort Bend County Sheriff's Office and therefore in charge of the Fort Bend County Jail. (*Motion for Summary Judgment*, Exhibit 2, *Affidavit of Kenneth Lee*). According to Captain Lee, Long was provided with a copy of the *Inmate Handbook* upon his arrival at the Jail on October 31, 2003. (*See id.* at 5). Captain Lee maintains that Long was familiar with the procedures for filing Inmate Request Forms to ask for religious accommodations,[3] and that he was also familiar with the inmate grievance procedures, but that Long did not comply with either procedure in this instance. (*See id.* at 5-6).

Captain Lee reports that there is no record that Long filed an Inmate Request Form to ask for a religious accommodation of any kind prior to or during the holy month of Ramadan in October 2005. (*See id.* at 6). Captain Lee notes further that, although Long filed an inmate grievance form complaining that he had been denied a sack lunch, he did not appeal the adverse result. (*See id.*). The record shows that Long filed a formal grievance on October 11, 2005, in which he complained that an official at the Jail, identified as Sergeant

---

[3]     Captain Lee notes that Long had taken advantage of the Inmate Request Form process while at the Jail to request a special "pork-free diet" on at least three occasions. (*See Affidavit of Kenneth Lee*, at 5).

8

"Banamon," refused his request for a sack lunch so that he could meet his "religious obligation to fast during the daylight hours for the next 30 days." (*Motion for Summary Judgment*, Exhibit H, *Inmate Grievance*, at 109.  The grievance was denied as a "non-grievable" matter because Long had never submitted a formal Inmate Request Form to ask for sack lunches as a religious accommodation. (*See id.*, *Inmate Grievance Resolution Form*, at 108).  Long was informed of the results on October 20, 2005. (*See id.*).  Long did not file an appeal, meaning that he did not complete the second step of the formal grievance procedure. (*See Lee Affidavit*, at 5-6).  By failing to submit a written Inmate Request Form or to complete the inmate grievance procedure in place at the Jail, Captain Lee concludes that Long failed to exhaust his remedies as required before filing suit.

In a recent decision, the Supreme Court has emphasized that the exhaustion requirement found in the PLRA, 42 U.S.C. § 1997e(a), mandates "proper exhaustion," *Woodford v. Ngo*, — U.S. —, 126 S. Ct. 2378, 2387 (2006), which demands compliance with prison procedural rules.  Because § 1997e(a) expressly requires exhaustion, prisoners may not deliberately bypass the administrative process by flouting an agency's procedural rules.  *See id.*, 126 S. Ct. at 2389-90.  By failing to comply with procedures available at the Jail, Long failed to properly exhaust his administrative remedies before filing his complaint in federal court.  This is not sufficient to satisfy the PLRA's exhaustion requirement found in § 1997e(a), which mandates exhaustion *before* filing suit.  *See Underwood v. Wilson*, 151 F.3d 292, 296 (5th Cir. 1998) (affirming the dismissal even under circumstances that would seem "inefficient"), *cert. denied*, 526 U.S. 1133 (1999).

Long's failure to exhaust administrative remedies means that his complaint is subject to dismissal for lack of compliance with § 1997e(a).  Because the record discloses no genuine issue of material fact, Sergeant Boehnemann is entitled to summary judgment on this issue.  Alternatively, the Court concludes that the plaintiff's claims fail for other reasons discussed further below.

**B.     Claims for Injunctive Relief are Moot**

Noting that Long transferred from the Fort Bend County Jail to state prison on or about January 2, 2006, Sergeant Boehnemann argues that any claim for injunctive relief is moot as a matter of law.  According to his more definite statement, Long is presently serving a fourteen-year prison sentence that was imposed as the result of a felony conviction in October of 2005 for credit card abuse and identification fraud in cause number 38774A. Long also has a prior felony conviction from 1996, in which he received a twenty-eight year sentence for tampering with a government record.  *See Long v. State*, No. 14-96-00910-CR, 1999 WL 395010 (Tex. App. — Houston [14th Dist.] 1999, no pet.).

Long has not demonstrated a reasonable probability that he will soon return to the Fort Bend County Jail and the pleadings do not otherwise show that his request for injunctive relief concerns constitutional violations that are "capable of repetition yet evading review." *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002).  Under these circumstances, Long's transfer to a different prison facility renders moot any claim for injunctive relief concerning the Fort Bend County Jail.  *See Oliver*, 276 F.3d at 741; *see also Cooper v. Sheriff, Lubbock County, Tex.*, 929 F.2d 1078, 1084 (5th Cir. 1991) (holding that an inmate's transfer from

10

county jail to state prison rendered moot his claims for injunctive relief).  Accordingly, the defendant is entitled to summary judgment on this issue.

### C.    Claims for Compensatory and Punitive Damages

Sergeant Boehnemann argues further that Long is not entitled to compensatory or punitive damages because he did not suffer a compensable injury.  To the extent that Long seeks compensatory and punitive damages for any imposition upon his religious beliefs, his claim claims fail as a matter of law because the PLRA, 42 U.S.C. § 1997e(e), bars recovery of these types of damages absent a showing that the plaintiff suffered a physical injury while in custody.  The Fifth Circuit has confirmed that compensatory damages are barred by 42 U.S.C. § 1997e(e) in a case such as this one where there is no showing of any physical injury.[4]  *Geiger v. Jowers*, 404 F.3d 371, 374-75 (5th Cir. 2005) ("To the extent [that the prisoner] seeks compensation for injuries alleged to have resulted from a First Amendment violation, the district court properly determined that his claim is barred by the physical injury requirement of § 1997e(e).").  Absent an allegation that Long suffered any physical injury while in custody, his claim for compensatory damages lacks an arguable basis in law and is subject to dismissal for failure to state a claim upon which relief can be granted.  28 U.S.C. § 1915(e)(2)(B); *Geiger*, 404 F.3d at 374.

---

[4]    42 U.S.C. § 1997e(e) provides as follows: "No federal civil action may be brought by a prisoner confined to a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."

11

To the extent that Long's claim for punitive damages is also premised on mental or emotional distress, he has not alleged facts showing that the defendant's conduct was so egregious or reprehensible as to warrant punitive damages. *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003); *BMW of North Amer. Inc. v. Gore*, 517 U.S. 559, 575 (1996). Moreover, to the extent that Long seeks punitive damages to compensate for any alleged emotional harm resulting from a constitutional violation, this claim also appears barred by the PLRA. *See Davis v. District of Columbia*, 158 F.3d 1342, 1348 (D.C. Cir. 1998) (holding that compensatory and punitive damages for violations of the constitutional right to privacy are barred by the PLRA); *but see Allah v. Al-Hafeez*, 226 F.3d 247, 253 (3d Cir. 2000) (distinguishing between punitive damages sought for a constitutional violation itself, and punitive damages sought to compensate for mental or emotional suffering of the type barred by § 1997e(e)). As discussed further below, Long does not demonstrate a constitutional violation in this case. Because the damages sought by Long are barred by the PLRA, his claims fail as a matter of law and the defendant is entitled to summary judgment on this issue.

### D.    Long Fails to Demonstrate a Constitutional Violation

Long appears to claim that, by refusing his request for sack lunches during Ramadan, the restrictions imposed on him at the Fort Bend County Jail violated his right to freely exercise his religion under the First Amendment to the United States Constitution. Sergeant Boehnemann maintains that Long failed to properly request a religious accommodation pursuant to policies in place at the Jail, which afforded Long a reasonable opportunity to

12

exercise his religious beliefs or request such an accommodation.  Sergeant Boehnemann contends therefore that Long fails to demonstrate a First Amendment violation.

The First Amendment to the United States Constitution provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ."  U.S. CONST. amend. I.   In keeping with the curtailment of privileges contemplated by a criminal conviction and prison sentence, inmates retain only those First Amendment rights that are consistent with their status as prisoners or with the legitimate penological objectives of the corrections institution.  *Hudson v. Palmer*, 468 U.S. 517, 523 (1984).  "[C]entral to all other corrections goals is the institutional consideration of internal security within the corrections facilities themselves."  *Pell v. Procunier*, 417 U.S. 817, 823 (1974); *see also Procunier v. Martinez*, 416 U.S. 396, 412 (1974). "Prison officials must be free to take appropriate action to ensure the safety of inmates and corrections personnel and to prevent escape or unauthorized entry."  *Bell v. Wolfish*, 441 U.S. 520, 547 (1979). Accordingly, the Supreme Court has held that "even when an institutional restriction infringes a specific constitutional guarantee, such as the First Amendment, the practice must be evaluated in the light of the central objective of prison administration, safeguarding institutional security."  *Id.* (citing *Jones v. North Carolina Prisoners' Labor Union*, 433 U.S. 119, 129 (1977)).

In the prison context, regulations burdening an inmate's religious practices have traditionally been subject to a deferential standard and held valid if "reasonably related to legitimate penological interests."  *O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987).  In

*Turner v. Safley*, 482 U.S. 78 (1987), the Supreme Court set out the relevant factors for deciding the reasonableness of such a prison regulation, including: (1) whether there is a valid, rational connection between the regulation and the legitimate, neutral governmental interest used to justify it; (2) whether there exist alternative means for prisoners to exercise the constitutional right at issue; (3) the impact of an accommodation on prison staff, inmates, and allocation of prison resources; and (4) whether any alternative exists that would fully accommodate prisoners' rights at low costs to valid penological interests. *Id.* at 89-91; *see Freeman v. Texas Dep't of Criminal Justice*, 369 F.3d 854, 860-61 (5th Cir. 2004) (applying the *Turner* factors to a prison policy providing religious services to five major designated religious sub-groups).

Sergeant Boehnemann avers that he was not informed at any time that Long wanted a sack lunch so that he could comply with the daylight fasting requirement during the holy month of Ramadan. (*Motion for Summary Judgment*, Exhibit 2, *Boehnemann Affidavit* at 3-6). Sergeant Boehnemann notes that, as kitchen manager, he is not in charge of approving requests for religious accommodations for inmates at the Jail. (*See id*. at 1-2). Sergeant Boehnemann insists, therefore, that he is not responsible for any alleged imposition on Long's religious practice.

As discussed previously, Sergeant Boehnemann notes that Long failed to follow proper procedures outlined in the *Inmate Handbook*, which explain the process for requesting a religious accommodation pursuant to the Religious Practices Plain in place at the Jail. (*Motion for Summary Judgment*, Exhibit B, *Inmate Handbook*, at 8; Exhibit C, *Religious*

14

*Practices Plan*).  According to the procedures in place at the Jail, written Inmate Request Forms seeking religious accommodations are submitted to the Jail Administrator (*i.e.*, Captain Lee) for consideration and approval.  As noted above, Captain Lee confirms that he did not receive an Inmate Request Form asking for a sack lunch during Ramadan or otherwise complaining that his religious needs were not being met.  (*Motion for Summary Judgment*, Exhibit 1, *Affidavit of Kenneth Lee*, at 6).  Because Long failed to request a religious accommodation, Sergeant Boehnemann argues that Long fails to demonstrate a First Amendment violation.

Moreover, although jail officials failed to provide a sack lunch, Sergeant Boehnemann contends that Long fails to show that his right to free expression of religion was unreasonably burdened because reasonable alternatives were available to Long so that he could participate in the daylight fast practiced during the month of Ramadan.  Sergeant Boehnemann explains that all breakfast meals at the Jail are served before sunrise and that the lunch and dinner trays provided to inmates contain items such as fruit, salad, and bread, which can be saved by inmates and eaten after sunset.  (*See id*. at 6).  Sergeant Boehnemann also presents records from the Jail commissary, showing that Long was able to purchase additional food items in October of 2005, during the holy month of Ramadan.  (*Motion for Summary Judgment*, Exhibit K, *Commissary Records*).  Thus, Long had other alternatives available that allowed him to honor his religious beliefs.

In the context of a free-exercise claim, the Fifth Circuit has explained that "[t]he pertinent question is not whether the inmates have been denied specific religious

accommodations, but whether, more broadly, the prison affords the inmates opportunities to exercise their faith." *Freeman*, 369 F.3d at 861 (citing *Goff v. Graves*, 362 F.3d 543, 549 (8th Cir. 2004) ("The critical question for *Turner* purposes is whether the prison officials' actions deny prisoners their free-exercise rights without leaving open sufficient alternative avenues for religious exercise.")).  Significantly, the record shows that Long did not make a written request for a religious accommodation in compliance with Jail procedures.  Long was well aware of how these procedures worked because previous requests by him for a special pork-free diet had been approved by Captain Lee.  Because Long did not follow proper procedures by requesting a religious accommodation during Ramadan, he cannot blame Sergeant Boehnemann or anyone else at the Jail for any imposition that he experienced. Thus, Long fails to demonstrate that he was denied an opportunity to exercise his religious beliefs in violation of the First Amendment.  Because the record discloses no genuine issue of material fact on this question, the defendant is entitled to summary judgment on this claim.

**E.   RLUIPA**

Read liberally, Long's pleadings could be construed to complain that the defendant violated his rights under the Religious Land Use and Institutionalized Persons Act (the "RLUIPA"), codified as amended at 42 U.S.C. § 2000cc et seq., by substantially burdening the exercise of his religious beliefs during the holy month of Ramadan. Section 3(a) of RLUIPA states that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results

from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person – (1) is in furtherance of a compelling government interest; and (2) is the least restrictive means of furthering that compelling government interest." 42 U.S.C. § 2000cc-1(a).  Long fails to state a claim against Sergeant Boehnemann under this statute, however,  because the RLUIPA provides only for "appropriate relief against a government," and does not contemplate recovery from individuals.  *See Gooden v. Crain*, 405 F. Supp. 2d 714, 723 (E.D. Tex. 2005).  For this reason, Long has no claim under the RLUIPA.

**IV.    CONCLUSION AND ORDER**

Based on the foregoing, the Court **ORDERS** as follows:

1.    The defendant's motion for summary judgment (Doc. # 23) is **GRANTED**.

2.    The defendant's motion to compel the plaintiff to answer interrogatories (Doc. # 21) is **DENIED** as moot.

3.    The complaint is **DISMISSED** with prejudice.

The Clerk is directed to provide copies of this order to the parties.

SIGNED at Houston, Texas, on **October 12, 2006**

Nancy F. Atlas
United States District Judge

17